**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TROY MONN,

        Plaintiff,

v.                                      Case No. 3:15-cv-703-J-34MCR

WILLIAM NIELDS, M.D., KENNETH HAGAN,
M.D., and JOHN DOE, Physician Advisor in his or
her official capacity,

        Defendants.
_____/

**O R D E R**

This matter is before the Court on Defendant Kenneth Hagan, M.D.'s Motion to Dismiss Plaintiff's Complaint and Memorandum of Law in Support Thereof (Doc. #8; Motion) filed on July 13, 2015. Plaintiff filed his response in opposition to the Motion on August 20, 2015. See Response to Defendant Hagan's Motion to Dismiss Complaint (Doc. #20; Response). With leave of Court, see Order (Doc. #23) dated August 26, 2015, Hagan filed a reply to the Response on August 28, 2015. See Reply to Plaintiff's Response and Memorandum of Law in Support Thereof (Doc. #24; Reply). Accordingly, the Motion is ripe for review.

I.   **Background Facts**[1]

Plaintiff Troy Monn (Monn), an inmate in the custody of the Florida Department of Corrections (FDOC) files this action Defendants (1) William Nields, M.D. (Dr. Nields), a physician employed by Corizon Health, Inc. and/or FDOC as the Chief Health Officer at the Reception and Medical Center (RMC) and who at various times had authority to deny requests for healthcare procedures under FDOC review; (2) Kenneth Hagan, M.D. (Dr. Hagan), a surgeon licensed to practice medicine in Florida; and (3) John Doe, a pseudonym for any physician responsible for healthcare denials either before or after Dr. Nields' term. Id. at 1-2, ¶¶2-4; 8, ¶54.

Shortly before he began his sentence in 2010, Monn "suffered from bilateral inguinal hernias, protrusions of his internal organs through the muscles of his groin[.]" Id. at 2, ¶7. His condition was first diagnosed at the county jail, where he was issued a hernia support belt. Id. On September 7, 2010, upon Monn's arrival at the RMC, a nurse interviewed him and threw away his hernia belt. Id. at ¶8. For the next six months, Monn had no support for his hernias, which grew causing more tissue to protrude. Id. at ¶¶9-10. After repeatedly seeking treatment for the hernia through the "sick call" process, on June 1, 2011, Dr. Dela Cerna examined Monn and referred him to a general surgeon at RMC for a corrective

---

[1] In considering the Motion, the Court must accept all factual allegations in the Complaint (Doc. #1; Complaint) as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014); Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002) (citing Ortega v. Christian, 85 F.3d 1521, 1524-25 (11th Cir. 1996)). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved. Additionally, because this matter is before the Court on a motion only brought by Dr. Hagan, the Court's recitation of the facts will focus on Monn's allegations about Dr. Hagan, not the other Defendants.

surgery scheduled to take place on June 22, 2011. Id. at 2-3, ¶11. Although an unnamed surgeon concurred with the diagnosis and gave Monn informed consent forms, the Utilization Management (UM) department of FDOC denied the request.

According to Monn, the UM department is an independent office operated by registered nurses who review proposed medical procedures and prescribed medical devices for inmates without examining the inmate to determine if the proposed procedure or device is too expensive. Id. at 3, ¶¶12-15. When the UM denies medical care, the decision must be ratified by an FDOC doctor designated as the "Physician Advisor," who also does not examine or treat the inmates before denying medical treatment. Id. at ¶16.

On August 18, 2011, Monn returned to sick call where Dr. Leslie Colombani examined him and determined that Monn needed corrective hernia surgery. Id. at ¶17. As such, Dr. Colombani requested the surgery from UM. Id. UM again denied the surgery. Id. at ¶18. In October 2011, FDOC issued Monn a hernia truss belt similar to the support belt he had been given before he first arrived at RMC thirteen months earlier. Id. at ¶19. However, due to the advanced state of the hernia and the lack of treatment for over a year, Monn still suffered from severe pain and had only limited ability to stand or walk. Id. On September 4, 2012, Dr. Hagan performed a surgical repair of Monn's inguinal hernias at RMC. Id. at 4, ¶20; 7, ¶41. Soon after the surgery, on September 6, 2012, Monn reported severe pain and swelling in his right testicle. Id. at 4, ¶21. As a result, medical staff performed an ultrasound on September 11, 2012. Id. at 4, ¶22; 7, ¶42; 8, ¶55. The September 11th ultrasound report, to which Monn did not have immediate access, "indicated that there was no vascular flow to or from the right testicle and that there was a

suspected left varicocele." Id. at 4 ¶23; 7, ¶43.  A varicocele is "a blockage of blood flow from the testicle resulting in swelling, severe pain, and atrophy of the testicle." Id. at 1, ¶1. The report further noted that "THE PATIENT SHOULD BE SEEN BY SURGICAL CONSULT AS SOON AS POSSIBLE." Id. at 4, ¶¶23-24; 7, ¶43; 8, ¶56 (emphasis in Monn's Complaint). Monn did not receive a surgical consult. Id. at 4, ¶24. On September 13, 2012, a day after Monn requested information, Dr. Nields responded with the following:

> Mr. Monn, I am aware of your situation[.] I spoke with your doctor who spoke with your surgeon after reviewing the ultrasound. The surgeon advised us to monitor your condition, but that the pain and ultrasound do[] not warrant further medical intervention at this point. We will react to changes in your condition should any arise[] and will keep your surgeon informed of your progress. In other words even though it may seem that "nothing is being done," we are monitoring your progress and expect your symptoms to resolve. We are doing so by the advice of your operating surgeon.

Id. at 4, ¶24. When Monn later saw his surgeon, Dr. Hagan, for a follow-up examination Dr. Hagan assured Monn that the swelling and pain were "normal" and should resolve over time and recommended Monn's discharge from the hospital. Id. at 4, ¶25; 7, ¶¶41, 48. Monn asserts that Dr. Hagan made these findings despite having reviewed the ultrasound report and knowing that Monn's blockage warranted surgical intervention as soon as possible. Id. at 7, ¶¶44-45.

In September 2013, Monn received his medical records and learned for the first time of the recommendation for an immediate surgical consult. Id. at 5, ¶26. Prior to receiving his records Monn had been assured by Doctors Nields and Hagan that "no further intervention was warranted." Id. Monn alleges that as a result of these actions medical attention for the vascular blockage of his testicles was delayed causing him to suffer permanent loss of his testicle, severe pain and discomfort, and permanent loss of

testosterone production. Id. at ¶27; 6, ¶39; 8, ¶52; 9, ¶65. In light of the alleged conduct, Monn brings a claim against Dr. Hagan pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious need for varicocele surgery. See id. at 6-8.[2] As relief, Monn seeks compensatory and punitive damages in addition to reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988. Id. at 6, 8, 9-10.

## II.     Summary of the Arguments

In the Motion, Defendant Hagan seeks dismissal of Count II. See generally, Motion.[3] Dr. Hagan argues that Monn's claim against him should be dismissed because Monn fails to make any factual allegations supporting his claim that Dr. Hagan failed to provide timely postoperative care. Id. Dr. Hagan contends that mere allegations that he chose not to order additional surgery because he felt the patient was doing well, even if negligent, are insufficient to state an Eighth Amendment claim. Id. at 8-9. Dr. Hagan also contends that Monn's own allegations show that his medical issues were not callously ignored, but to the contrary, he received significant, appropriate medical care. Id. at 9. In sum, Dr. Hagan asserts that a difference in medical opinion cannot form the basis for a constitutionally cognizable claim. Id. at 11.

---

[2] Although the title of Count III of the Complaint includes Defendant Hagan, the body of the claim focuses instead on Defendant Nields. In his Response to the Motion, Monn acknowledges that the inclusion of Dr. Hagan's name in Count III was a typographical error, and that Count III should only be against Dr. Nields. Response at 1-2. Thus, the Court will construe Count III as brought against Defendant Nields, not Defendant Hagan, and will not address it in this Order.

[3] In the Motion, Dr. Hagan refers to Monn as proceeding pro se. Motion at 1. However, the record reflects that counsel representing Monn filed the Complaint, see Complaint at 10, and counsel continues to represent Monn. See Response at 7.

In his Response to Dr. Hagan's Motion, Monn contends that his allegations that Dr. Hagan had knowledge of, but failed to address, Monn's postoperative vascular blockage is sufficient to state a claim. Response at 2-6. Monn further argues that Dr. Hagan's refusal to follow the direction in the ultrasound report and that he "lied" to Monn about the source and nature of his pain and swelling reflect a choice not to inquire further, rather than any medical judgment. Id. at 7.

In his Reply, Dr. Hagan asserts that Monn is misquoting his medical record. Reply at 1-2. He contends that Monn received a surgical consultation as requested in the ultrasound report because Monn stated that he did meet with his surgeon. Id. at 1, ¶2. Dr. Hagan further argues the ultrasound report requested a surgical consult, not surgical intervention. Id. at 2, ¶3. Thus, Dr. Hagan concludes that Monn's allegations at best allege merely a difference of medical opinion or negligence, but fall short of a constitutional violation. Id. at 2-3.

### III.  Standard of Review

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1, 122 S.Ct. 992, 995 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v.

Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d 929. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950. Thus, in ruling on a motion to dismiss, the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[4]

## IV.    Discussion

"[S]ection 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law." Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted); see 42 U.S.C. § 1983. Thus, to state a claim under 42 U.S.C § 1983, a plaintiff must sufficiently allege that he or she was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam). Here, Monn alleges that Dr. Hagan violated his Eighth Amendment rights by his deliberate indifference to Monn's serious medical need for varicocele surgery.

A prisoner's medical treatment and conditions of confinement are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 2480,

---

[4] Prior to Iqbal, Eleventh Circuit precedent instructed that a heightened pleading standard applied in § 1983 actions where "the defendants are individuals who may seek qualified immunity." See Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1179 (11th Cir. 2009). However, in Randall v. Scott, 610 F.3d 701 (11th Cir. 2010), the Eleventh Circuit determined that "[a]fter Iqbal it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." See Randall, 610 F.3d at 707-10. In light of this Eleventh Circuit precedent and because Defendant Hagan does not assert that the heightened pleading standard applies, the Court will apply the standard of review set forth in Twombly and Iqbal. Id. at 710; see also Nettles v. City of Leesburg Police Dep't, 415 F. App'x 116, 120-21 (11th Cir. 2010) (unpublished); but see Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1233 (11th Cir. 2010) (applying the heightened pleading standard post-Iqbal); Keating v. City of Miami, 598 F.3d 753, 762-63 (11th Cir. 2010) (same).

125 L.Ed.2d 22 (1993). Indeed, the Eighth Amendment's prohibition against cruel and unusual punishment requires that prisoners be provided "humane conditions of confinement," including adequate food, shelter, clothing, and medical care. Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001) (citing Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)). It further imposes a duty upon prison officials to "take reasonable measures to guarantee the safety of inmates." Farmer, 511 U.S. at 832, 114 S.Ct. at 1976 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)). Thus, an inmate may maintain a cause of action under the Eighth Amendment based on either a condition of confinement or a failure to provide medical care. Evans v. St. Lucie Cnty. Jail, F. App'x 971, 973 (11th Cir. 2011) (internal citations omitted). Each of these claims requires "an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting Farmer, 511 U.S. at 834, 114 S.Ct. at 1977). In addition to these two requirements, a plaintiff must also allege causation. See Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) ("[A]s with any tort claim, [the plaintiff] must show that the injury was caused by the defendant's wrongful conduct."). Thus, to state a cognizable Eighth Amendment claim, a prisoner must allege "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).

Here, in complaining about Dr. Hagan's failure to act, Monn challenges the failure to provide him postoperative medical care. In the Motion, Dr. Hagan does not challenge the sufficiency of Monn's allegations as to his serious medical need.[5] Nor does Hagan argue that Monn has failed to allege causation. Instead, Dr. Hagan argues that Monn has failed to plead facts to show that his state of mind amounted to deliberate indifference.[6]

Upon review of the Complaint, the Court is of the view that Monn has presented sufficient allegations to state a claim plausible on its face. Although Dr. Hagan asserts that Monn's allegations reflect mere negligence or a difference of opinion, that assertion ignores Monn's specific assertions. Monn contends that Dr. Hagan "knew that [Monn] had a blockage that warranted surgical intervention as soon as possible." Complaint at 7, ¶44. Despite this knowledge, Monn alleges that Dr. Hagan told him "there was no cause for concern and that the blockage did not warrant surgery." Id. at ¶45. Monn also alleges that

---

[5] "[A] serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citation omitted).

[6] The deliberate indifference standard applies in failure to provide medical treatment cases. Helling, 509 U.S. at 32, 113 S.Ct. at 2480. The Eleventh Circuit has explained that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow, 320 F.3d at 1245 (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)). Conduct that is more than mere negligence may include: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all. McElligott, 182 F.3d at 1255. But, "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). Further, a simple difference in medical opinion between the medical staff and an inmate as to the latter's diagnosis or course of treatment does not establish deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Dr. Hagan was aware of Monn's need for varicocele surgery but discouraged him from seeking medical care by assuring Monn that the condition would resolve itself. Id. at ¶48. Accepting the reasonable inference that Dr. Hagan's decision under these circumstances was not a reasoned medical decision, these allegations are sufficient to state a deliberate indifference claim. Dr. Hagan's contention that Monn is inaccurately quoting from the ultrasound report fails to assume Monn's allegations are true and draw all reasonable inferences in Monn's favor, as the Court must do at this stage. Moreover, there is no indication that Monn's allegations of a need for surgical intervention is drawn solely from the ultrasound report, as Dr. Hagan contends. Rather Monn makes factual allegations regarding Dr. Hagan's subjective knowledge and objective lack of response. Further, Monn alleges that Dr. Hagan took part in concealing relevant information and misleading Monn about his condition. These allegations are sufficient to state a subjective knowledge of a risk to Monn, a disregard of that risk, and conduct that is more than mere negligence. Farrow, 320 F.3d at 1245; McElligott, 182 F.3d at 1255. Moreover, these allegations are sufficient to state a plausible claim that reflects more than a difference of medical opinion but rather a failure to provide postoperative medical care. Thus, assuming these facts are true and affording all inferences to the non-moving party, this Court finds that Monn has stated a claim against Dr. Hagan, and the Motion is due to be denied.

Therefore, it is now

**ORDERED:**

1.      The Court construes Count III of the Complaint (Doc. #1) as brought against Defendant Nields, not Defendant Hagan.

2. Defendant Hagan's Motion to Dismiss (Doc. #8) is **DENIED**.

3. Defendant Hagan shall respond to the Complaint by January 29, 2016.

**DONE AND ORDERED** at Jacksonville, Florida this 6th day of January, 2016.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

tc 12/28
c:
Counsel of Record